UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ARMENTA,<br><br>    Plaintiff,<br><br>v.<br><br>PHILLIPS, et al.,<br><br>    Defendants. | Case No. 1:19-cv-00907-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED<br><br>(ECF NO. 17)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING THE CLERK OF COURT TO ASSIGN A DISTRICT JUDGE |

    Richard Armenta ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on July 3, 2019. (ECF No. 1). The Court screened his complaint on October 29, 2019, finding that Plaintiff's complaint failed to state any cognizable claims. (ECF No. 12). Plaintiff filed his First Amended Complaint on February 12, 2020 (ECF No. 17), which is before this Court for screening.

    The Court has reviewed the First Amended Complaint and finds that Plaintiff has failed to state any cognizable claims. Plaintiff's allegations against prison staff at California Men's Colony based on the alleged failure to protect Plaintiff from attacks by prison gang members fail to state a cognizable claim under the Eighth Amendment for the reasons described in this

order. The Court recommends dismissal with prejudice of these claims. As to the allegations from 2019 based on conduct by prison officials at Corcoran State Prison, the Court recommends that the claims based on these allegations be dismissed without prejudice because the actions occurred after the date Plaintiff filed this complaint and are unrelated to the other claims Plaintiff is attempting to assert in this case.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seek monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 9), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a

plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint ("FAC") generally alleges that he has been assaulted multiple times by gang members at various prisons, and that prison officials are to blame for these attacks because they are failing to protect him. Plaintiff's FAC is thirty-one pages long. Approximately eighty-five pages of exhibits are attached to the complaint. The following is a summary of Plaintiff's allegations.

Plaintiff was committed to the custody of California Department of Corrections and Rehabilitation ("CDCR") in 2008. He was first received at R.J. Donovan, San Diego, California, as a Sensitive Needs Yard ("SNY") inmate. SNY is also known as protective custody and is designed for inmates who have dropped out of a gang or have a "hit" on their life. SNYs also have gangs, which have formed on these yards. These gangs are also classified as Security Threat Groups ("STG").

On or about 2013, while housed at Ironwood State Prison, Plaintiff was assaulted by an STG member from the "25" (two-five) prison gang because Plaintiff provided information to custody regarding 25 politics in the prison system. Plaintiff was labelled an informant and placed in Administrative Segregation ("Ad-Seg") for his own safety. As Plaintiff informed custody, he feared for his life/safety at Ironwood State Prison.

In March of 2013, Plaintiff was transferred to Calipatria State Prison, which is a Level 4 SNY prison.

Within the first week, Plaintiff was assaulted by a 25 member, stemming from Plaintiff's assault at Ironwood State Prison. Plaintiff was placed in Ad-Seg as custody received information that Plaintiff's life and safety was in danger. A hit was put on Plaintiff's life by the 25 prison gang. A "1030" confidential memo was placed in Plaintiff's file reflecting this hit threat.

Plaintiff was then placed in Ad-Seg and then transferred to R.J. Donovan in April of 2013. Plaintiff was housed on a Level 4 SNY. In December of 2015, Plaintiff was assaulted by a 25 member (his cellmate) due to the hit that was placed on him at Ironwood State Prison. The 25 prison gang is on every level 4 SNY and was formed on the SNYs.

In CDCR, any inmate who has a hit, or "green light," placed on them by the 25 prison gang will be assaulted by this prison gang or even killed.

On December 26, 2015, Plaintiff was placed in Ad-Seg at R.J. Donovan after he expressed to custody that he feared for his life/safety due to the hit. Plaintiff remained in Ad-Seg until he was transferred to New Folsom State Prison.

On August 8, 2016, while housed at New Folsom State Prison, Plaintiff was given a weapon by an "Independent Riders" member to stab a correctional office. Plaintiff turned in the weapon to custody and was interviewed by "I.G.I" c/o Bentecourt. It was documented that Plaintiff's life and safety were at risk, that a hit was placed on Plaintiff's life by the Independent Riders, and that Plaintiff was unable to safely program on the SNY as his life was in danger.

At that time Plaintiff withdrew his SNY chrono. Plaintiff clearly stated in February of 2017 at Classification that he feared for his life on all SNYs.

In March of 2017, Plaintiff was transferred to Lancaster State Prison on a General Population Yard, not an SNY. In June of 2017, Plaintiff was assaulted by another inmate and placed in Ad-Seg. On or about August, Plaintiff was interviewed by a counselor while housed in Ad-Seg. Plaintiff told the counselor that he feared for his life and safety on all SNYs and was unable to program on them. He told the counselor that the 25s and the Independent Riders threatened his life. The counselor documented this on a confidential 1030. Once again it was documented and noted that his life/safety was in danger on SNY yards.

In September of 2017, Plaintiff transferred to California Men's Colony ("CMC") prison, a level 3 General Population prison. At CMC, Plaintiff advised correctional counselor Hoarsley that his life was in danger on SNYs. Plaintiff's mom also put Hoarsely on notice and personally contacted Hoarsley by phone, as well as correctionally counselor Pham. This

occurred on or about February of 2018. Plaintiff's mother also contacted the Ombudsman via correspondence.

On June 4, 2018, while at CMC, Plaintiff was placed in Ad-Seg for a different situation. Pham then put Plaintiff up for transfer to New Folsom State Prison. Plaintiff immediately expressed to Pham that his life was in danger at New Folsom State Prison because Plaintiff had already been there in 2017 and transferred out because his life was in danger due to the Independent Riders housed there. It was well documented and noted that Plaintiff could not safely program at New Folsom State Prison. Plaintiff told Pham that he feared for his life and safety if transferred to New Folsom Prison or an SNY, because all level 4 SNY prisons house the Independent Riders and the 25 gang, which both want to kill Plaintiff. Plaintiff also asked Pham to please put Plaintiff on a General Population yard, not an SNY.

Pham ignored Plaintiff's requests for help. He ignored documentation in Plaintiff's file. Pham knew Plaintiff's life was in danger if he was sent to New Folsom State Prison or an SNY.

At Classification on July 26, 2018, told Classification, Pham, and Associate Warden Phillips that he would be assaulted at New Folsom Prison or any SNY yard. Phillips also ignored Plaintiff's requests for help and the documentation in Plaintiff's file indicating Plaintiff's life was in danger at New Folsom Prison.

Pham and Phillips sent Plaintiff back to New Folsom State Prison.

On or about July of 2018, at CMC, Plaintiff was interviewed by Perez in Ad-Seg and expressed to Perez that his life was in danger. Defendant Perez failed to act to prevent future attacks on Plaintiff.

Also, Warden J. Gastelo was deliberately indifferent by approving Plaintiff's transfer to New Folsom Prison and ignoring Plaintiff's requests for help. Gastelo reviewed and approved Plaintiff's 602 appeal allowing unconstitutional practices to continue to occur. Gastelo was the warden in charge of Plaintiff's care and had a duty to protect him.

On August 8, 2018, Plaintiff was transferred to New Folsom State Prison. When Plaintiff arrived, he was going to be housed on A-Yard, and Plaintiff expressed to the A-Yard Sergeant that he could not safely program on A-Yard because the Independent Riders have a hit

5

on his life. Plaintiff told the sergeant Plaintiff did not know why he was transferred to New Folsom.

Plaintiff was then placed in Ad-Seg for self-expressed safety concerns. It was documented in a confidential memo dated September 17, 2018, which stated "Plaintiff[']s return to SACS EOP General Population would jeopardize Plaintiff[']s safety." On September 21, 2018, classification at New Folsom reviewed the information provided in the confidential memo dated September 17, 2018 and determined that Plaintiff's current safety concerns were localized to SAC. Plaintiff was then put up for transfer to an SNY at Tehachapi. Plaintiff was not in agreement with this transfer. When Plaintiff arrived at Tehachapi he immediately told custody staff that there was a hit on his life by the 25s and Independent Riders. Classification at Tehachapi agreed that there was imminent risk to Plaintiff's safety if released back to the SNY at Tehachapi due to the high number of active STG II affiliates in the Level 4 SNY-180 yard.

On October 4, 2018, Plaintiff transferred out of Tehachapi, en route to High Desert State Prison, which is a level 4 SNY. En route, Plaintiff had a layover at North Kern Prison. While at North Kern Prison, Plaintiff went on suicide watch and his mental health care was changed from CCCMS to EOP, which is a higher level of care.

On October 16, 2018, Plaintiff transferred to High Desert State Prison, a Level 4 SNY. Plaintiff was classified as an Enhanced Out-Patient ("E.O.P.") inmate. High Desert State Prison is not an EOP prison

That same day, Plaintiff was assaulted by an Independent Rider. Plaintiff received a broken nose. All Defendants at CMC were deliberately indifferent to his safety and set into motion a series of events that led to Plaintiff being assaulted/injured at High Desert State Prison.

Plaintiff's friend, Dennis Cruz, was killed in Corcoran B-yard in 2017 as a result of a hit on him and CDCR's failure to protect him. All defendants fail to follow their own rules, regulations, and policies concerning protection of prisoners.

Plaintiff is unable to safety program on SNYs, which houses the SNY gangs that have a

6

hit on Plaintiff's life, which is every level 4 SNY. While Plaintiff was housed in CMC in 2018, he told all defendants that his life was in danger and his pleas for help were ignored. Plaintiff was ultimately assaulted in October of 2018 at High Desert State Prison by an Independent Rider. Plaintiff received an injury, i.e., a broken nose, which affects Plaintiff's breathing daily. All defendants knew there was a hit on Plaintiff's life, yet have done nothing to keep Plaintiff safe.

Further, on September 2, 2019, Plaintiff's life and safety were put in danger at Corcoran State Prison by Acevedo and E. Parks. Plaintiff was put on 3A-yard, with a "confidential enemy" named Angel Cadena.

On January 10, 2017, while Plaintiff was housed in New Folsom Prison, Plaintiff filed a 602 appeal, which was accepted as emergency as Plaintiff was in danger, to document enemy concerns about Angel Cadena. Plaintiff's appeal was granted and a confidential 1030 memo was completed documenting enemy concerns indicating Angel Cadena as an enemy.

Plaintiff's life and safety were put in substantial danger at Corcoran. Plaintiff filed and exhausted his 602 appeals on this issue.

### III. EVALUATION OF PLAINTIFF'S CLAIMS

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B. Failure to Protect

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. *Id.* at 834.

"'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer,* 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad,* 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

                    i.    <u>Plaintiff's Claims Against CMC Defendants</u>

Plaintiff's complaint fails to state a cognizable claim against CMC staff under these legal standards. Plaintiff alleges facts showing that he was at substantial risk of serious harm by certain STG groups, especially on Level 4 SNYs. However, this chronology also shows substantial care taken by the prison to address these risks. Plaintiff describes how he repeatedly complained about this risks and how prison officials put him first in SNYs, which are designed to protect inmates, put him in Ad-Seg, transferred him to different prisons, put him on General Population yards, created confidential memos for his files, and engaged in a classification process to evaluate each of his transfers.

In the first portion of his complaint, Plaintiff describes an assault at Ironwood State prison by member of the 25 prison gang. However, there are no allegations that he knew of this threat, informed any defendant, or that the assault was due to a failure to protect.

After this assault at Ironwood State Prison, unnamed prison officials place Plaintiff in Ad-Seg for his own safety. They also transferred him to Calipatria State Prison.

Plaintiff was then assaulted at Calpatria State Prison. However, there are no allegations that Plaintiff knew he was at risk by this transfer, informed a defendant of that risk, or that this assault resulted from a failure to protect by any defendant.

After the Calpatria State Prison assault, unnamed prison officials again put Plaintiff in Ad-Seg for his own safety, and also made a confidential memo about the risk. They also transferred him to another prison, R.J. Donovan Level 4 SNY. He remained at R.J. Donovan until he was transferred to New Folsom State Prison.

At New Folsom State Prison, Plaintiff alleges he turned in a weapon given to him by the Independent Riders. After this, prison official Bentecourt documented that Plaintiff's life was

at risk from the Independent Riders. Plaintiff for the first time alleges that he could not safely program on any SNY and Plaintiff withdrew his SNY chrono classification. This withdrawal of his SNY chrono happened in February 2017.

The next month, prison officials transferred him to another prison, Lancaster State Prison, on the General Population yard, rather than the SNY. In June of 2017, he was nevertheless assaulted. However, Plaintiff does not claim that this assault, which happened on the General Population yard, was due to any failure to protect by any defendant.

Plaintiff was put in Ad-Seg again, and Plaintiff told a counselor that he feared going on any SNY. The counselor documented this.

Plaintiff was then transferred to another prison, CMC, and put on another General Population yard. Plaintiff alleges he told multiple defendants at CMC that he could not be housed on any Level 4 SNY. Plaintiff also alleges that his mother confirmed this, which appears to refer to the fear of being placed on any Level 4 SNY. Plaintiff then makes his most detailed claims against certain defendants, who are the prison officials at CMC: Correctional Counselor Pham and Associate Warden Brian Phillips.

During this time, Plaintiff alleges "Plaintiff was placed in Ad-Seg for a different situation," and prison officials proposed a transfer to New Folsom State Prison. Plaintiff alleges that he told defendants Pham and Phillips that he could not be transferred to New Folsom State Prison because the Independent Riders were housed there. Plaintiff alleges that at this time he told Defendants he could not be housed at any Level 4 SNY or any yard at New Folsom State Prison. Plaintiff underwent a Classification hearing concerning his fears about New Folsom State Prison. Plaintiff then met with defendant Perez regarding his fears about the 25s and the Independent Riders, as well as the danger to his life on SNYs and at New Folsom State Prison.

On August 8, 2018, Plaintiff was transferred to New Folsom State Prison. He was placed in the A-yard, not an SNY. The allegations about this transfer come closest to alleging a failure to protect because Plaintiff makes several allegations that he told prison officials that he could not be transferred to New Folsom State Prison at all, and yet defendants transferred him

nevertheless. However, Plaintiff still does not allege that any defendant knew that placement in any yard at New Folsom State Prison would present an unreasonable risk to Plaintiff's safety. And in fact, Plaintiff was not harmed at New Folsom State Prison after this transfer. Instead, Plaintiff immediately told the Sergeant at A-Yard at New Folsom State Prison that he could not safely program there. As a result, Plaintiff was immediately put in Ad-Seg based on his self-expresses safety concerns. New Folsom's classification committee reviewed his information and determined that Plaintiff's safety concerns were localized to SAC. Plaintiff was put up for a transfer to SNY Tehachapi, and Plaintiff protested. Prison officials then decided to transfer him to High Desert State Prison, which is a level 4 SNY. There is no indication that Plaintiff actually faced a substantial risk of serious harm while at New Folsom State Prison.

At a layover at North Kern State Prison, Plaintiff was re-classified as an EOP inmate. After this layover, Plaintiff was transferred to High Desert State Prison, where he was immediately assaulted by an Independent Rider STG, who broke Plaintiff's nose. Plaintiff does not allege this injury resulted from a failure to protect by any specific defendant. On the contrary, Plaintiff was sent to North Kern State Prison after Plaintiff objected to New Folsom and Tehachapi prison. Plaintiff does not make any allegation that any defendant knew of and disregarded an excessive risk to his health and safety by transferring him to North Kern State Prison. None of the named defendants appear to have been involved at all with this transfer.

Instead, Plaintiff tries to tie his ultimate injury to CMC defendants by alleging that "All Defendants at CMC … set in motion a series of events that led to [Plaintiff] being assaulted/injured at High Desert State Prison." Based on the legal standards set forth above, this connection between CMC defendants and the ultimate assault at North Kern State Prison does not state a claim because it was not foreseeable. CMC Defendants could not reasonably foresee that by sending Plaintiff to New Folsom State Prison, Plaintiff's classification would be reconsidered, Plaintiff would reject other proposed prisons, and ultimately be transferred to High Desert State Prison, resulting in an assault. The assault is thus not the proximate cause of the CMC defendants' conduct. Put another way, CMC defendants were not aware of an excessive risk that Plaintiff would be assaulted at High Desert State Prison as a result of being

transferred to New Folsom State Prison.

ii. Plaintiff's Claim Against Corcoran State Prison Defendants

Plaintiff filed this lawsuit on July 3, 2019. (ECF No. 1). In that complaint, Plaintiff admitted that he had not yet exhausted his administrative remedies as to the Corcoran State Prison defendants. According to Plaintiff, he "filed 2 more 602 appeals here at Corcoran and [his] requests for help continue to be denied. 1 602 appeal is at the 3rd level. The other at 2nd level." (Id. at 22-23).

After receiving Plaintiff's complaint, the Court issued an order regarding Plaintiff's potential failure to exhaust as to Corcoran State Prison Defendants. (ECF No. 6). The Court explained the legal standards regarding exhaustion and gave Plaintiff an option of voluntarily dismissing those Defendants. Plaintiff responded on July 24, 2019, stating that he wished to "dismiss the Corcoran State Prison Defendants without prejudice." (ECF No. 8). However, Plaintiff appears to have added at least some of these defendants back into the case in his FAC, asserting that an incident occurred on September 2, 2019, and that he has exhausted his administrative remedies as to this incident.

A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2). "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *K'napp v. California Dept. of Corrections,* 2013 WL 5817765, at *2 (E.D.

12

Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also* Fed. R. Civ. P. 20(a)(2) ("Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.").

Plaintiff alleges that on September 2, 2019, his life and safety were put in danger at Corcoran State Prison by Acevedo and E. Parks. Plaintiff was put on 3A-yard, with a "confidential enemy" named Angel Cadena. However, this incident occurred at a different institution than the other incidents in this case (as noted above, Plaintiff voluntarily dismissed the Corcoran State Prison defendants from his original complaint, and he does not appear to have reasserted those claims), neither of these defendants were involved in the earlier incidents that Plaintiff alleged in his FAC, and none of his other claims involve Angel Cadena (or any confidential enemies).

As these claims are based on a separate occurrence and are asserted against defendants that were not involved in his other claims, these claims should be asserted in a different case. Thus, the Court recommends that the claims based on these allegations be dismissed without prejudice to Plaintiff asserting these claims in a different case.

### IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint and finds that it fails to state any claims that should proceed past the screening stage.

The Court does not recommend granting further leave to amend because the Court provided Plaintiff with an opportunity to amend his complaint with the benefit of the applicable legal standards, and Plaintiff filed his First Amended Complaint with the guidance of those standards. It appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's claims that prison staff at California Men's Colony failed to protect him

13

be dismissed with prejudice for failure to state a claim.
2. Plaintiff's claims that prison staff at Corcoran State Prison failed to protect him be dismissed without prejudice to Plaintiff asserting these claims in a different case.
3. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: __**April 8, 2020**__          /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE